PEOPLE v ULECKI

Docket No. 84783. Submitted May 22, 1986, at Detroit. Decided July 7, 1986.

Defendant, Dorothy Mae Ulecki, was convicted of two counts of first-degree murder, Macomb Circuit Court, Frank E. Jeannette, J. At trial, the only direct evidence linking defendant to the murders was testimony by defendant's cell mate concerning statements made to her by defendant. During cross-examination, the cell mate testified that the assistant prosecutor assigned to her case was also assigned to defendant's case, and that after she came forward with the information concerning defendant's involvement in the murders the charges against the cell mate of bank robbery and felony-firearm were reduced to attempted armed robbery, to which she pled guilty, and her bond was reduced. During defendant's case in chief, she attempted to call the assistant prosecutor to elicit testimony concerning his plea bargaining with defendant's cell mate in order to impeach her credibility. The court refused to allow the assistant prosecutor to be called. At a hearing on a motion for a new trial, the assistant prosecutor gave testimony paralleling the testimony of the cell mate at trial. The court denied the motion for a new trial. Defendant appealed. *Held:*

1. The proper procedure was to ask the court to conduct a hearing at which the assistant prosecutor could testify.

2. Whether or not a defendant should be allowed to call a prosecuting attorney as a witness is within the sound discretion of the trial judge. The court did not abuse its discretion in refusing to allow the assistant prosecutor to testify.

3. Under the circumstances, the assistant prosecutor was not required by the Disciplinary Rules to disqualify himself.

Affirmed.

Witnesses — Prosecuting Attorneys — Criminal Law.

Whether or not a defendant should be allowed to call a prosecuting attorney as a witness is within the sound discretion of the trial judge.

References

Am Jur 2d, Witnesses § 178.

Prosecuting attorney as a witness in criminal case. 54 ALR3d 100.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Carl J. Marlinga,* Prosecuting Attorney, *Don L. Milbourn,* Chief Appellate Lawyer, and *Robert John Berlin,* Assistant Prosecuting Attorney, for the people.

*Robert S. Ayford,* for defendant.

Before: MacKenzie, P.J., and Beasley and C. W. Simon,* JJ.

Beasley, J. Defendant, Dorothy Mae Ulecki, was convicted by a jury of two counts of first-degree murder, in violation of MCL 750.316; MSA 28.548. She was sentenced to life in prison on both counts, with her sentences to run concurrently. Defendant appeals as of right.

The charges against defendant arose out of the stabbing deaths of her aunt and uncle. The fingerprints of defendant and her boyfriend were found at the scene of the homicides. Other circumstantial evidence discovered during the investigation of the murders, such as defendant's use of the victims' credit cards after the murders, further implicated defendant and her boyfriend in the killings. As a result of this investigation, defendant was arrested, placed in the Macomb County Jail, and charged with first-degree murder.

At trial, the only direct evidence linking defendant to the killings was the testimony of her cell mate in the county jail. The cell mate testified that defendant had told her that she and her boyfriend had planned in detail to kill defendant's aunt and uncle, that she had been present when the murders took place, and that she had assisted her boyfriend in attempting to render her aunt unconscious. The defendant testified that she had

_____
* Circuit judge, sitting on the Court of Appeals by assignment.

been present at the scene of the killings when her boyfriend had attacked her aunt and uncle. However, she went on to deny that she had known that her boyfriend was going to attack the victims or that she had assisted him in the attack, but, as indicated, the jury rejected this explanation and found her guilty.

In her motion for a new trial and on appeal defendant raises one issue. She claims that the trial judge committed reversible error by not allowing her to call the assistant prosecuting attorney in charge of this case as a witness at trial. The trial judge, after conducting a post-trial evidentiary hearing, found that his refusal to allow defendant to call the assistant prosecutor as a witness at trial did not prejudice defendant in this case. Thus, the trial judge denied defendant's motion for a new trial.

The record of the trial and the subsequent evidentiary hearing reveal that defendant wanted to call the assistant prosecuting attorney as a witness in order to attempt to impeach the credibility of defendant's cell mate. During defense counsel's cross-examination of defendant's cell mate, it was revealed that the assistant prosecutor assigned to defendant's case was also assigned to the cell mate's case. During cross-examination, the testimony revealed that the cell mate had originally been charged with bank robbery and felony-firearm. However, after the cell mate came forward with the information concerning defendant's involvement in the subject murders, the assistant prosecutor agreed to reduce the charge against the cell mate to attempted armed robbery. The cell mate testified that she knew the original charges against her allowed a maximum sentence of life in prison, along with a consecutive mandatory two-year prison term for felony-firearm, while the

reduced charge carried only a five-year maximum prison sentence.

The cell mate went on to testify that she subsequently pled guilty to the reduced charge, that her bond was then reduced from $50,000 to $5,000 with ten percent cash required, and that she was then able to make bond. The cell mate also testified that she had been scheduled for sentencing one week prior to defendant's trial. However, her sentencing was adjourned to a date subsequent to when she would testify at defendant's trial. The cell mate testified that she did not desire the delay in her sentencing, but felt her sentencing was adjourned in order to ensure that she would be free to testify at defendant's trial. She also testified that no deal or agreement had been made between her and the prosecutor in exchange for her testimony at defendant's trial and that she did not believe her reduced charge and bond were the result of her willingness to testify at defendant's trial. She also stated that she did not really expect the fact that she testified at defendant's trial to affect her eventual sentence.

Subsequently, in defendant's case in chief, defense counsel attempted to call the assistant prosecuting attorney as a witness in order to elicit testimony concerning his plea bargaining with defendant's cell mate. Specifically, defense counsel wanted to bring out the details of any deals or agreements made by the assistant prosecutor in exchange for the cell mate's testimony at defendant's trial and, thus, hopefully impeach the cell mate's credibility in this matter. As indicated, the trial judge refused to allow defendant to call the assistant prosecuting attorney as a witness. The trial judge based his refusal on his belief that the jury had been made completely aware of the facts surrounding the cell mate's dealings with the as-

sistant prosecutor through her testimony during cross-examination, and that no useful purpose would be served by calling the prosecutor as a witness to testify further on the cell mate's case. The trial judge specifically stated that he did not want to confuse or distract the jury by effectively trying the cell mate's case during defendant's trial. The trial judge found that the jury had all the facts necessary for a determination of the cell mate's motivation and credibility in testifying at defendant's trial.

As noted above, subsequent to defendant's trial, an evidentiary hearing was conducted, and the assistant prosecutor testified concerning the plea bargaining involved in the cell mate's case. His testimony paralleled the testimony of the cell mate given during cross-examination at defendant's trial. He testified that no deal or agreement had been made with the cell mate in order to obtain her testimony at defendant's trial. He expressly testified that he had reduced the charge against the cell mate and had not opposed a reduction in bond, based upon the mitigating factors present in the cell mate's particular case. (The cell mate had allegedly used only a toy gun during the bank robbery.) The prosecutor did admit that, in reducing the bank robbery charge against the cell mate without getting prior approval from his superior, he had not followed office policy. He also testified that the sentencing of the cell mate had been adjourned in order to ensure that the cell mate would testify at defendant's trial. However, the prosecutor expressly denied that he had made any promises to the cell mate concerning her sentence in exchange for her testimony.

Based on the prosecutor's testimony at the evidentiary hearing, the trial judge denied defendant's motion for a new trial. The trial judge

found that his refusal to allow defendant to call the assistant prosecuting attorney as a witness at trial had not prejudiced defendant in this case. We agree.

In arguing that the trial judge committed reversible error, defendant relies on the Michigan Supreme Court decision in *People v Reed*.[1] The *Reed* Court addressed a trial judge's refusal to allow a defendant to call the prosecuting attorney as a witness at a hearing held outside the presence of the jury for the express purpose of discovering any evidence suppressed by the prosecutor which could be favorable to the accused pursuant to *Brady v Maryland*.[2] The *Reed* Court held that in this situation

the trial judge erroneously limited the scope of the *Brady* hearing, and that once requested, such a hearing should include all witnesses and all evidence which can reasonably cast light on the question to be determined. [*People v Reed*, 393 Mich 342, 354; 224 NW2d 867 (1975).]

However, we believe the holding in *Reed* does not apply to this case for two reasons. First, defendant failed to request a *Brady* hearing at trial. Defendant herein directly attempted to call the prosecuting attorney as a witness in order to find out if any deals had been made with the cell mate. Such an attempt to call the prosecutor as a witness before the jury, as the trial judge noted, is highly unusual and is not analogous to the *Brady* hearing situation addressed in *Reed*.

Second, defendant never specifically alleged that the prosecutor was suppressing evidence which could be favorable to the defendant in her attempt

[1] 393 Mich 342; 224 NW2d 867 (1975).
[2] 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963).

to impeach the cell mate's testimony and which the prosecutor was required to disclose. Defendant seemed to want to go on a fishing expedition, in front of the jury, for any information related to the cell mate's case which could in some way impeach her credibility beyond that which had already been revealed during cross-examination of the cell mate. Such a procedure is inappropriate and threatens to extend far beyond what the prosecutor was required to disclose concerning his dealings with the cell mate.

In *People v Atkins*,[3] the Michigan Supreme Court, in an analogous context, stated:

> Where an accomplice or co-conspirator has been granted immunity or other leniency to secure his testimony, it is incumbent upon the prosecutor and the trial judge, if the fact comes to the court's attention, to disclose such fact to the jury upon request of defense counsel. The same requirement of disclosure should also be applicable if reasonable expectations, as opposed to promises, of leniency or other rewards for testifying resulted from contact with the prosecutor. It has been held to be a denial of due process for a prosecutor not to correct the testimony of such a witness against the defendant, where the witness testifies that he has been promised no consideration for his testimony and the prosecutor knows this statement to be false. In regard to this duty to disclose, the prosecutor's office has been treated as an entity, and the promise of one of its attorneys, even if unknown to the assistant prosecutor trying the case, has been attributed to the state.

> However, it is one thing to require disclosure of facts (immunity or leniency) which the jury should weigh in assessing a witness's credibility. It is quite another to require "disclosure" of future possibilities for the jury's speculation. Indeed, if a prosecutor were required to volunteer that, al-

---

[3] 397 Mich 163, 173-174; 243 NW2d 292 (1976).

though there was no agreement, he intended to recommend some sort of consideration for a witness because the witness was testifying in this and other cases or had corrected his past misdeeds, could this not be viewed as vouching for that witness's credibility? The focus of required disclosure is not on factors which may motivate a prosecutor in dealing subsequently with a witness, but rather on facts which may motivate the witness in giving certain testimony. Of the latter, this jury was made well aware by means of the thorough and probing cross-examination by defense counsel.

More specifically, in *People v Lytal*,[4] the Supreme Court recently stated:

The prosecutor is not obliged to show that no consideration was offered for a witness's testimony. . . . The prosecutor is only obliged to disclose any consideration offered to or received by the witness.

In the within case, all of the essential information surrounding the prosecutor's dealings with the cell mate were revealed during cross-examination of the cell mate. The cell mate, and the police officer who had dealt with her concerning the information she had in this matter, both testified that no deal or agreement had been made with the cell mate for her testimony at defendant's trial. The prosecutor's testimony at the post-trial evidentiary hearing corroborated this testimony. Furthermore, the prosecutor's post-trial testimony added nothing to the testimony presented at trial concerning the cell mate's expectations for favorable treatment at sentencing in exchange for her testimony at defendant's trial. The prosecutor's testimony merely revealed inferences the jury

[4] 415 Mich 603, 612; 329 NW2d 738 (1982).

members would naturally have made on their own concerning the cell mate's expectations of favorable treatment and her motivation for testifying (i.e., the cell mate hoped she would get probation).

We believe that the proper procedure in this case would have been for defendant to have requested a *Brady* hearing at trial and for the trial judge to have conducted such a hearing in order to determine whether the prosecutor knew of any deals or agreements made with the cell mate in exchange for her testimony. In such a *Brady* hearing, defendant could have properly called the prosecutor as a witness. However, in this case, a *Brady* hearing was effectively conducted by the trial judge in deciding defendant's motion for a new trial. As previously indicated, the prosecutor's testimony at this hearing revealed that, if he had testified at trial, he would not have provided any significant information which would have aided defendant in impeaching the cell mate's testimony.

We note that it has been generally held or recognized that whether a defendant should be allowed to call a prosecuting attorney as a witness is a matter within the sound discretion of the trial judge.[5] We conclude that, based on the evidence revealed at the post-trial *Brady*-type hearing, the trial judge in this case did not abuse his discretion in refusing to allow defendant to call the prosecuting attorney as a witness. The prosecutor's testimony would have been cumulative and would not, beyond a reasonable doubt, have caused any rational trier of fact to vote for acquittal in this case.

We also find that defendant's argument on appeal that the assistant prosecutor should have withdrawn himself from this case pursuant to Disciplinary Rule 5-102 is without merit. The as-

[5] 81 Am Jur 2d, Witnesses, § 99, p 144.

sistant prosecutor in this case never expected to be called as a witness at trial. He reasonably believed that he could reveal all the relevant facts surrounding the procurement of the cell mate's testimony and that there were no deals or agreements made with the cell mate in exchange for her testimony through the testimony of the cell mate and the police officer who dealt with her. In such a situation, where the prosecutor was surprised by defendant's attempt to call him as a witness, the prosecutor is not required to withdraw from the case.[6]

If defendant had requested a *Brady* hearing during trial and testimony at the hearing made it obvious that the prosecutor would be called as a witness, then the prosecutor may have been required to withdraw from the case under Code of Professional Responsibility and Canons, DR 5-102. However, that is not the situation presented here. Therefore, we conclude that the trial judge did not abuse his discretion in refusing to allow defendant to call the prosecutor as a witness at trial, and the prosecutor was not required to withdraw from the case when defendant attempted to call him as a witness.

Affirmed.

---

[6] *Id.*