#27772-a-LSW

**2016 S.D. 77**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

| THOMAS KONRAD, | Plaintiff and Appellee, |
|---|---|
| v. | |
| MYRON R. STOEBNER and PATRICIA STOEBNER, | Defendants and Appellants. |

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FIRST JUDICIAL CIRCUIT
HUTCHINSON COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE PATRICK T. SMITH
Judge

* * * *

| | |
|---|---|
| ROBERT T. KONRAD of Olinger, Lovald, McCahren, Van Camp & Konrad, PC Pierre, South Dakota | Attorneys for plaintiff and appellee. |

| | |
|---|---|
| SCOTT R. SWIER MICHAEL A. HENDERSON of Swier Law Firm, Prof. LLC Avon, South Dakota | Attorneys for defendants and appellants. |

* * * *

CONSIDERED ON BRIEFS
ON OCTOBER 3, 2016

OPINION FILED **11/02/16**

#27772

WILBUR, Justice

[¶1.]     In this appeal of the circuit court's confirmation of an arbitration award, we determine whether the arbitrator exceeded his powers.  We affirm.

**Background**

[¶2.]     Thomas Konrad and Myron and Patricia Stoebner entered into a contract for the sale of real property on December 30, 2002.  They amended that agreement and executed a second contract in 2011 (Contract).  Under the Contract, the Stoebners agreed to sell to Konrad nine parcels of real estate in Hutchinson and Charles Mix counties.  The sales were set to occur on specific dates over the course of several years.  The Contract set forth the purchase price for each parcel.

[¶3.]     After the Stoebners sold Konrad Parcel 8 in January 2014, but before the parties closed on the sale of the last parcel, Parcel 7, the Stoebners learned that Konrad had executed a mortgage on Parcel 8 prior to becoming the record owner of that parcel.  In the Stoebners' view, Konrad's execution of a mortgage before he owned Parcel 8 constituted a breach of contract.  The Stoebners sent Konrad a notice of default and refused to close on the sale of Parcel 7, which was scheduled to occur on January 9, 2015.  In response, on January 9, 2015, Konrad sent the Stoebners a notice of default for the Stoebners' failure to sell Konrad Parcel 7.

[¶4.]     The Contract contains an arbitration clause.  On February 10, 2015, Konrad sent the Stoebners a demand for arbitration.  In March 2015, after the Stoebners did not consent to arbitration, Konrad brought suit in circuit court for injunctive relief, requesting that the court enter an order compelling the Stoebners to sell and transfer Parcel 7 to Konrad.  The Stoebners answered and requested that

-1-

the court compel arbitration. Konrad did not object, and the parties retained James McMahon to serve as the arbitrator.

[¶5.] On May 18, 2015, the arbitrator sent the parties a letter setting forth the agreed-to rules to govern the arbitration. In particular, the parties agreed that the arbitrator was to resolve the dispute between the parties and "that the decision or award of the arbitrator [would] be final." The parties further agreed that the arbitrator would issue a written decision. In a subsequent letter, the arbitrator identified the parties' claims as follows: Konrad alleged the Stoebners breached the Contract when they refused to close on the sale of Parcel 7, and the Stoebners alleged that Konrad breached the Contract when he gave CorTrust Bank a mortgage on Parcel 8. In the Stoebners' view, the mortgage constituted a "transfer" as defined by the Contract, which is an incurable "event of default" under the Contract.

[¶6.] The arbitrator held a hearing on August 4, 2015. The arbitrator identified the primary issue to be decided: "whether a mortgage on Parcel 8, which was given by Konrad to CorTrust Bank and recorded by CorTrust on January 7, 2014 was an incurable default under the Master Contract." The arbitrator noted that the evidence demonstrated that Konrad signed a promissory note, commercial loan and agreement, and mortgage in favor of CorTrust in December 2013. The mortgage listed Parcel 8 as collateral. CorTrust was not to record the mortgage until Konrad closed on the sale of Parcel 8. (The Stoebners did not dispute that CorTrust was not to record the mortgage.) CorTrust, however, mistakenly recorded the mortgage on January 7, 2014, three days prior to the sale of Parcel 8 to Konrad.

After the closing on Parcel 8, the Stoebners and Konrad learned that CorTrust recorded the mortgage early. Ultimately, Konrad and CorTrust executed a partial release of the mortgage. The Stoebners stipulated that they suffered no harm as a result of CorTrust recording the mortgage three days early. However, they argued that Konrad's execution of a mortgage on Parcel 8 while the Stoebners still owned Parcel 8 constituted a "transfer" in violation of Section 7.1 D of the Contract. Konrad, in response, asserted that the execution of the mortgage did not constitute a transfer because he did not transfer or intend to transfer his interest in Parcel 8; CorTrust mistakenly recorded the mortgage.

[¶7.] The arbitrator issued a written decision on August 12, 2015. The arbitrator identified that Article 7.3 provided that Konrad did "not have the right to cure any Event of Default under Sections 7.1 A, 7.1 B, or 7.1 E." There is no section 7.1 E in the Contract. The arbitrator concluded that Section 7.3's reference to Section 7.1 E was "clearly supposed to be 7.1 D." Section 7.1 D provided that a default occurs when Konrad transfers his "interest in any Parcel other than in accordance with the requirements of Article 8." The arbitrator held, therefore, that "a transfer in violation of 7.1 D would be incurable." A "Transfer" is defined in Section 8.1 as "any assignment, conveyance, transfer, lease, sublease, or mortgage of this Master Contract or any interest in any Parcel."

[¶8.] Based on his view of the evidence, the arbitrator concluded that Konrad's execution of a mortgage on Parcel 8 did not constitute a transfer in violation of 7.1 D. "[T]here is no question a mortgage was not to be filed on Parcel 8 prior to the closing. Consequently, Konrad did not transfer or intend to transfer his

interest in Parcel 8 prior to the closing." In the arbitrator's view, what happened "was not an Event of Default under the Master Contract and was not a legitimate basis for the Stoebners to refuse to transfer Parcel 7 or to invalidate the transfer of Parcel 8." The arbitrator regarded it "[i]llogical to believe that the language in Article 7.1 D of the Master Contract was intended to preclude Konrad from obtaining a loan and giving a mortgage to a lender as he closed on a parcel." Alternatively, the arbitrator indicated that even if the Contract could be construed in this manner, it would have been "unreasonable for Stoebners to refuse a request by Konrad to give a mortgage to a financing institution loaning Konrad money to purchase a parcel." The arbitrator ruled that the Stoebners breached the Contract and ordered the Stoebners to transfer Parcel 7 to Konrad. The arbitrator also ordered that the Stoebners pay the arbitrator's and Konrad's fees.

[¶9.] Konrad filed an application for judicial confirmation of the arbitration award in circuit court under SDCL 21-25A-23. The Stoebners moved to vacate the award under SDCL 21-25A-24(3), arguing that the arbitrator exceeded his powers. The court held a hearing on November 23, 2015, issued a memorandum decision on January 8, 2016, and issued findings and conclusions on January 20, 2016. The court denied the Stoebners' application to vacate the award and confirmed the arbitration award. The Stoebners appeal, asserting that the circuit court erred when it refused to vacate the arbitration award.

**Analysis**

[¶10.] The Stoebners assert that the arbitrator exceeded his powers by disregarding the contractual definition of "transfer." In the Stoebners' view, had

-4-

the arbitrator correctly applied the unambiguous definition of "transfer," it would have concluded that Konrad's mortgage of his interest in Parcel 8 constituted a transfer in violation of the Contract.

[¶11.]     "Those who voluntarily make arbitration agreements assuredly bargain for these advantages, and a deferential standard of review protects such contractual arrangements." *Black Hills Surgical Physicians, LLC v. Setliff*, 2014 S.D. 68, ¶ 14, 855 N.W.2d 407, 411. The Legislature has enacted such protections, strictly limiting when a court may vacate an arbitration award. *Id.* "But on the question whether arbitrators exceeded their powers, we have long held a less deferential standard of review." *Id.* ¶ 16. We examine de novo whether an arbitrator exceeded his powers as defined by the arbitration agreement or submission. *Id.*; *Azcon Constr. Co., Inc. v. Golden Hills Resort, Inc.*, 498 N.W.2d 630, 635 (S.D. 1993).

[¶12.]     In our review, we "need only examine the submission and the award to determine whether the award conforms to the submission." *Spiska Eng'g, Inc. v. SPM Thermo-Shield, Inc.*, 2007 S.D. 31, ¶ 12, 730 N.W.2d 638, 643 (quoting *Double Diamond Constr. v. Farmers Coop Elev. Ass'n of Beresford*, 2004 S.D. 65, ¶ 10, 680 N.W.2d 658, 660-61). Here, the parties retained the arbitrator and submitted to the arbitrator the power to interpret the parties' contract, including the meaning of the term "transfer." When a party asserts that the arbitrator exceeded his authority by failing to apply the plain meaning or terms of a contract, we will not "interfere with the arbitrator's award unless it can be said with positive assurances that the contract is not susceptible to the arbitrator's interpretation." *Id.* ¶ 17 (quoting

*United Food & Commercial Workers, AFL-CIO, CLC, Local No. 88 v. Shop 'N Save Warehouse Foods, Inc.*, 113 F.3d 893, 895 (8th Cir. 1997)).  Nor will we vacate an award unless the arbitrator's interpretation of the contract "so directly contradicts the plain meaning of the parties' agreement that it effectively rewrites it."  *Id.* ¶ 17 (quoting *Boise Cascade Corp. v. Paper Allied-Indus., Chem. & Energy Workers (PACE), Local 7-0159*, 309 F.3d 1075, 1081 (8th Cir. 2002)).  "Only when arbitrators '*must* have based' their awards 'on some body of thought, or feeling, or policy, or law that is outside the contract' are such awards deemed in excess of the arbitral powers delegated in the parties' agreement."  *Setliff*, 2014 S.D. 68, ¶ 17, 855 N.W.2d at 412 (quoting *Ethyl Corp. v. United Steelworkers of Am.*, 768 F.2d 180, 184-85 (7th Cir. 1985)).

[¶13.]  From our review, the arbitrator did not base his decision "on some body of thought, or feeling, or policy, or law outside the contract[.]"  *See id.*  A "transfer" includes "any assignment, conveyance, transfer, lease, sublease, or mortgage of this Master Contract or any interest in any parcel."  And, under Section 7.1 D, Konrad may not "Transfer" his "interest in any Parcel other than in accordance with the requirements of Article 8."  The arbitrator concluded *Konrad* did not "transfer" his interest in Parcel 8 because *CorTrust* mistakenly recorded the mortgage three days before the parties closed on the sale of Parcel 8.  Reading Section 7.1 D in context with the definition of "transfer," we cannot say that the arbitrator's interpretation ignores the plain language of the contract or "directly contradicts the plain meaning of the parties' agreement" such that the arbitrator effectively rewrote the contract.  *See Spiska Eng'g, Inc.*, 2007 S.D. 31, ¶ 17, 730

N.W.2d at 644. Because the arbitrator did not exceed his powers when he decided the issue submitted, the circuit court did not err when it confirmed the arbitration award in favor of Konrad.

[¶14.]       Affirmed.

[¶15.]       GILBERTSON, Chief Justice, and ZINTER, SEVERSON, and KERN, Justices, concur.